UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| GREENSILL CAPITAL (UK) LIMITED, a foreign entity,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>TEMPUS INTERMEDIATE HOLDINGS, LLC, a Delaware corporation, JACK GULBIN, an individual, and B. SCOTT TERRY, an individual,<br><br>　　　　Defendants. | Civil No. 4:17cv127 |

## COMPLAINT

Plaintiff, Greensill Capital (UK) Limited ("Greensill"), hereby sues Defendants, Tempus Intermediate Holdings, LLC ("Tempus"), Jack Gulbin ("Gulbin") and B. Scott Terry ("Terry") (collectively, "Defendants"), and states:

### NATURE OF THE ACTION

1. This case stems from Tempus' failure to repay $9,658,224.34, plus interest, that it owes Greensill pursuant to the October 16, 2014 Parent Customer Agreement that Tempus entered into with Greensill (the "Customer Agreement," attached as Exhibit A).

2. As further detailed below, Tempus generated a principal balance of $10,289,307.29 over the course of four transactions for services that were provided to Tempus in connection with its business operations between October 2015 and January 2016, and, under the terms of the Customer Agreement, Tempus had irrevocable obligations to pay to Greensill certain specific amounts on specific maturity dates in respect of each of these four transactions.

3. Gulbin and Terry, under the terms of the October 15, 2015 Personal Guaranty they executed in favor of Greensill (the "Guaranty Agreement," attached as Exhibit B),

personally guaranteed Tempus' obligation to repay the entirety of the $10,289,307.29 principal balance, plus interest, to Greensill.

4. In March 2016, shortly after Tempus' default under the Customer Agreement, Greensill demanded immediate and full payment from Gulbin and Terry under the terms of the Guaranty. Rather than pursue legal action against Defendants at that time, Greensill entered into the March 31, 2016 Forbearance Agreement with Gulbin and Terry (the "Forbearance Agreement," attached as Exhibit C), whereby Gulbin and Terry (either themselves or through Tempus) would repay the entire balance owed to Greensill over the course of an agreed upon payment schedule.

5. In 2016, Defendants tendered to Greensill a total of $631,082.95 towards the outstanding principal, leaving a balance of $9,658,224.34 towards which Defendants have made no further payment.

6. Greensill's continued efforts to recover the outstanding balance from Defendants have been unsuccessful.

7. In this action against Defendants for breach of the Customer Agreement, Guaranty Agreement and Forbearance Agreement, Greensill seeks: i) to recover compensatory damages, plus pre-judgment and post-judgment interest; ii) a declaration that, under the terms of the Forbearance Agreement, Defendants are not permitted to pledge, sell, lease, transfer or otherwise dispose of their assets; iii) attorneys' fees, investigative expenses and all taxable costs; and iv) any other relief deemed just and proper.

## PARTIES, JURISDICTION AND VENUE

8.   Greensill is a foreign entity that is incorporated in England and Wales and maintains its registered office in London, England.

9.   Tempus is a Delaware corporation that maintains its principal place of business in Williamsburg, Virginia, which is in the Eastern District of Virginia, and is thus subject to personal jurisdiction in this Court.

10.   Gulbin is an individual over the age of 18 who, upon information and belief, is a resident of Colorado.  Gulbin is subject to personal jurisdiction in this Court pursuant to: i) Va. Code § 8.01-328.1(1) because he transacted business in this Commonwealth by serving as a principal of Tempus and being involved in running Tempus' regular business operations, which business operations included operations from their office in Williamsburg, VA, and ii) Va. Code § 8.01-328.1(7) because he "[c]ontract[ed] to insure [a] person, property or risk located in this Commonwealth at the time of contracting" by executing the Guaranty Agreement for the purpose of assisting Tempus in transacting business by inducing Greensill to extend and/or continue credit or other financial accommodations to Tempus and the Forbearance Agreement for the purpose of inducing Greensill to accept a repayment plan rather than pursue its rights and remedies against Defendants.  *See* Exhibit B at 1, Exhibit C at 3.

11.   Terry is an individual over the age of 18 who, upon information and belief, is a resident of South Carolina.  Terry is subject to personal jurisdiction in this Court pursuant to: i) Va. Code § 8.01-328.1(1) because he transacted business in this Commonwealth by serving as a principal of Tempus and being involved in running Tempus' regular business operations, which business operations included operations from their office in Williamsburg, VA.; and ii) Va. Code § 8.01-328.1(7) because he "[c]ontract[ed] to insure [a] person, property or risk located in this

Commonwealth at the time of contracting" by executing the Guaranty Agreement for the purpose of assisting Tempus in transacting business by inducing Greensill to extend and/or continue credit or other financial accommodations to Tempus and the Forbearance Agreement for the purpose of inducing Greensill to accept a repayment plan rather than pursue its rights and remedies against Defendants. *See* Exhibit B at 1, Exhibit C at 3.

12. Gulbin and Terry engaged in substantial and not isolated activity within this Commonwealth, including but not limited to, transacting business and managing the operations of Tempus and executing the Guaranty Agreement and the Forbearance Agreement for purposes of maintaining and furthering the business relationship between Greensill and Tempus.

13. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(2) because it involves a dispute between citizens of a State and a citizen of a foreign state and the amount at issue in this action exceeds $75,000.00, exclusive of interest, costs and attorneys' fees.

14. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) and (3) because the causes of action set forth herein accrued here and Defendants are all subject to this Court's jurisdiction in this action.

**GENERAL ALLEGATIONS**

**I.     The Purpose of the Customer Agreement Between Greensill and Tempus**

15. The stated purpose of the Customer Agreement was to establish a structure in which Tempus, the Customer, could enter into commercial transactions to purchase goods and/or services from a certain Supplier, and the Accounts Receivable generated by such Supplier from each of these commercial transactions could thereafter be assigned to Greensill, the Financial Institution. *See* Exhibit A, Introduction, Clauses (A) and (B).

16. The Customer Agreement defines the term "Supplier" as "any Person together with its successors and permitted assigns with whom a Supplier Agreement is at the relevant time in force." *See* Exhibit A, Definitions and Interpretation, Clause 1.1.

17. The definition of the term "Account Receivable" in the Customer Agreement is:

> the right to receive any and all present and future payments of money due and payable, whether due now or payable in the future, as a result of an Underlying Relationship, whether or not earned by performance.

*See* Exhibit A, Definitions and Interpretation, Clause 1.1.

18. Tempus specifically acknowledged and agreed that it would owe payment obligations to Greensill, as Supplier's Transferee, under the Customer Agreement:

> [t]his Agreement acknowledges the indebtedness of Parent to Financial Institution, as Supplier's Transferee, as more particularly provided for in clause 2.2 of the Schedule.

*See* Exhibit A, Agreement, Clause 1.

19. The Payment Obligations under the Customer Agreement include:

> the benefit of Parent's obligation to pay as provided by the provisions of clause 2.2, together with Parent's obligation to pay any late payment interest on the Certified Amount.

*See* Exhibit A, Definitions and Interpretation, Clause 1.1.

20. The Customer Agreement defines the term "Certified Amount" as, "with respect to any Payment Obligation, the gross amount of the related Account Receivable as specified in the relevant PAUF." *See* Exhibit A, Definitions and Interpretation, Clause 1.1.

21. The Customer Agreement and any contractual, quasi-contractual or non-contractual rights and obligations "arising out of or in connection with it shall be governed by and construed in accordance with the laws of England and Wales." *See* Exhibit A, Governing Law, Clause 10.1.

5

## II. Tempus' Payment Obligations to Greensill Pursuant to the Customer Agreement

22. The terms of the Customer Agreement authorized, but did not obligate, Tempus to submit PAUFs in connection with each Account Receivable generated from the services received from Tempus' Supplier. *See* Exhibit A, The PAUF and Payment Obligation, Clause 2.1.

23. As defined in the Customer Agreement, the term PAUF:

> means a payment assurance upload file, in the agreed format, which is created in respect of each Account Receivable, setting out details of Supplier, Invoice number, Certified Amount and Maturity Date and any other details agreed by the parties and which Customer may provide to Financial Institution from time to time.

*See* Exhibit A, Definitions and Interpretations, Clause 1.1.

24. Each PAUF submitted by Tempus created an irrevocable and binding payment obligation to the Supplier or to Greensill, as the Supplier's Transferee:

> Parent creates and assumes, in respect of the Account Receivables set out in each PAUF, **an independent, irrevocable, unconditional, legal, valid, transferable and binding obligation of Parent in favour of Supplier (or, in the event of a Transfer, in favour of the Supplier's Transferee**) to pay or procure the payment to the relevant Designated Account by 12:00 London time on the relevant Maturity Date[1] an amount equal to and in the same currency as the relevant Certified Amount without deduction, withholding or counterclaim and without exercising any right of set-off under the Underlying Relationship or otherwise, and such amount shall be due and payable by Parent on the Maturity Date, irrespective of any non or partial performance by Supplier under the Underlying Relationship.

*See* Exhibit A, The PAUF and Payment Obligation, Clause 2.2 (emphasis added).

[1] The Customer Agreement defines "Maturity Date" as "the settlement date of [a] Payment Obligation, being (a) the date set out against the corresponding Account Receivable as the 'maturity date' in the relevant PAUF or, if such date is not a Business Day, the preceding Business Day or (b) such earlier date on which such amount becomes immediately due and payable in accordance with the provisions of clause 2.2." *See* Exhibit A, Definitions and Interpretation, Clause 1.1.

25.    Tempus specifically consented to the Supplier transferring its right, title and interest in the Accounts Receivable to Greensill:

> Customer accepts and consents to the Transfer[2] of each Account Receivable, to and by Financial Institution and thereafter by any Person to whom such Account Receivable or part thereof has been Transferred. Parent and Customer each acknowledge that it shall treat each Transfer Notice it receives by any means as being given by or on behalf of Supplier or Supplier's Transferee.

*See* Exhibit A, The PAUF and Payment Obligation, Clause 2.8.

26.    Tempus further confirmed the irrevocable nature of the payment obligation owed to Greensill in connection with each PAUF that Tempus submitted, by representing and warranting to Greensill, *inter alia*, that:

> the obligation set out in clause 2.2 is an irrevocable, legal, valid and binding obligation of Parent that is fully enforceable against Parent by the relevant Supplier's Transferee;
>
> each Account Receivable Transferred by Supplier or Supplier's Transferee will be recognized by Parent and Customer as having been validly sold and assigned to the relevant Supplier's Transferee, free of any set off or Adverse Claim.

*See* Exhibit A, Representations and Warranties, Clause 4.1.5 and 4.1.6.

### III.    Gulbin's and Terry's Obligations to Greensill Under the Guaranty Agreement

27.    On October 15, 2015, Gulbin and Terry entered into the Guaranty Agreement because Greensill was otherwise "unwilling to extend or continue credit to or other financial accommodations to [Tempus]" pursuant to the Customer Agreement.[3]  *See* Exhibit B at 1.

28.    More specifically, the Guaranty Agreement stated that:

---

[2] The Customer Agreement defines "Transfer," "Transferred," or "Transfers" to mean "the sale, assignment or transfer or purported sale, assignment or transfer of an Account Receivable (whether in whole or in part)."  *See* Exhibit A, Definitions and Interpretation, Clause 1.1.

[3] The Guaranty Agreement defines "Customer" and "Financial Institution" as Tempus and Greensill, respectively.  *See* Exhibit B at 1.

> in consideration of the premises and of other good and valuable consideration and in order to induce the Financial Institution from time to time, in its discretion, to extend or continue credit or other financial accommodations to the Customer, **<u>the undersigned hereby guarantees to the Financial Institution and to any Supplier Transferee, absolutely and unconditionally, but subject to the limitations on the undersigned's liability specified below, the payment of all liabilities of the Customer to the Financial Institution</u>**, or where relevant a Supplier Transferee, of whatever nature, whether now existing or hereafter incurred, whether created directly or acquired by the Financial Institution or Supplier Transferee by assignment or otherwise, whether matured or unmatured, joint, several, or joint and several, secured or unsecured and whether absolute or contingent, including, without limitation, all interest or other claims which may accrue or arise after the commencement of bankruptcy, insolvency, reorganization, liquidation or other similar proceedings (all of which are hereinafter collectively referred to as the "**Liabilities of the Customer**").

*See* Exhibit B at 1 (underline emphasis added, bolded emphasis in original).

29. Under the terms of the Guaranty Agreement, Gulbin and Terry agreed that if Tempus defaulted on any payment obligation under the Customer Agreement, all liabilities of Tempus would be due and owing by Gulbin and Terry:

> [s]ubject to any other limitations contained in this Guaranty, all liabilities of the undersigned to the Financial Institution or Supplier Transferee hereunder or otherwise, whether or not then due or absolute or contingent, shall without notice or demand become due and payable immediately upon the occurrence of any default or event of default (howsoever used or defined) with respect to any Liabilities of the Customer (or the occurrence of any other event which results in acceleration of the maturity of any thereof) or the occurrence of any default hereunder ("**Event of Default**").
>
> In addition to (and without limiting) the generality of the foregoing, upon the occurrence and during the continuation of an Event of Default then and in any such event, the Financial Institution, or where relevant Supplier Transferee, may, without notice to the Customer or any aforesaid person, make the liabilities of the Customer to the Financial Institution or Supplier Transferee, whether or not then due, immediately due and payable hereunder as to the undersigned, and the Financial Institution and Supplier Transferees shall be entitled to enforce the obligations of the undersigned hereunder.

*See* Exhibit B at 2 and 3 (emphasis in original).

30.     Gulbin and Terry further agreed to indemnify Greensill against all losses related to the liabilities of Tempus and to reimburse Greensill for all expenses (including attorneys' fees) incurred in connection with enforcing the terms of the Guaranty Agreement:

> as principal obligor and as a separate and independent obligation and liability from its obligations and liabilities related to the Liabilities of the Customer, agrees to indemnify and keep indemnified Financial Institution and any Supplier Transferees in full and on demand from and against any and all losses, costs and expenses suffered or incurred by Financial Institution and any Supplier Transferee arising out of, or in connection with (i) any failure of Customer to perform or discharge the Liabilities of the Customer or (ii) if any of the Liabilities of the Customer are, or become, unenforceable invalid or illegal.
>
> The undersigned agrees that on five (5) business days [sic] notice, the undersigned shall reimburse the Financial Institution, or where relevant Supplier Transferee, for all the Financial Institution's, or where relevant Supplier Transferee's, expenses (including reasonable fees of counsel who may be employees thereof) incurred in connection with any [sic] the enforcement of this Guaranty and the collection of all amounts due hereunder.

*See* Exhibit B at 1-2.

31.     The Guaranty Agreement was "entered into under and pursuant to the laws of the State of New York and shall be in all respects governed, construed, applied and enforced in accordance with the laws of said State." *See* Exhibit B at 5.

**IV.   Defendants' Failure to Pay the Amounts Owed to Greensill Under the Customer Agreement and Guaranty Agreement**

32.     Between October 16, 2015 and January 20, 2016, Tempus caused 4 Accounts Receivable, totaling $10,289,307.29 to be generated by its Supplier, Bramid Limited ("Bramid"), for services supplied to Tempus by Bramid in connection with Tempus' business operations. Payment of these Accounts Receivable was due on the specific Maturity Dates set forth below:

| Invoice Date | Receivable No. | Maturity Date | Certified Amt. |
|---|---|---|---|
| October 15, 2015 | BOL-TIH-005-1-GCR | March 14, 2016 | $2,614,560.22 |
| October 15, 2015 | BOL-TIH-006-1-GCR | February 12, 2016 | $2,590,031.82 |
| December 15, 2015 | BOL-TIH-009-1-GCR | February 2, 2016 | $2,535,280.11 |
| January 14, 2016 | BOL-TIH-010-1-GCR | February 29, 2016 | $2,549,435.14 |
| | | **TOTAL** | **$10,289,307.29** |

True and correct copies of the invoices reflecting these Accounts Receivable are attached hereto as Composite Exhibit D.

33.     Tempus submitted PAUFs, attached hereto as Composite Exhibit E, for the 4 Accounts Receivable listed above, creating an "an independent, irrevocable, unconditional, legal, valid, transferable and binding obligation" to pay the Certified Amount of each Account Receivable on the relevant Maturity Date.  *See* Exhibit A, The PAUF and Payment Obligation, Clause 2.2.  This obligation constitutes the "Payment Obligation" set forth in Clause 1.1 of the Definitions and Interpretation of the Customer Agreement.

34.     Each of these 4 Accounts Receivable was Transferred to Greensill by Bramid in accordance with the Customer Agreement on the dates set forth below:

| Purchase Date | Receivable Number | Certified Amount |
|---|---|---|
| October 22, 2015 | BOL-TIH-005-1-GCR | $2,614,560.22 |
| October 22, 2015 | BOL-TIH-006-1-GCR | $2,590,031.82 |
| December 16, 2015 | BOL-TIH-009-1-GCR | $2,535,280.11 |
| January 20, 2016 | BOL-TIH-010-1-GCR | $2,549,435.14 |
| | **TOTAL** | **$10,289,307.29** |

35.     Under the terms of the Customer Agreement, the Transfer of each of these Accounts Receivable from Bramid to Greensill caused Tempus to incur an "independent, irrevocable, unconditional, legal, valid, transferable and binding obligation" to pay the Certified Amounts on the Maturity Dates set forth above to be Transferred to Greensill.  *See* Exhibit A, The PAUF and Payment Obligation, Clause 2.2.

36.     Accordingly, Tempus was required to pay Greensill the total Certified Amount owed of $10,289,307.29, pursuant to the Customer Agreement.

37.     Pursuant to the terms of the Guaranty Agreement, Gulbin and Terry guaranteed this financial liability of Tempus and acknowledged that upon Tempus defaulting on any payment obligation, all amounts owed by Tempus to Greensill would immediately be owed by Gulbin and Terry.  *See* Exhibit B at 2-3.

**V.     Defendants' Entry Into the Forbearance Agreement and Multiple Breaches Thereof**

38.     Tempus defaulted on its payment obligations under the Customer Agreement in or around February 2016.  *See* Exhibit C, at 1.

39.     On March 31, 2016, Greensill demanded, pursuant to the Guaranty Agreement, immediate payment of the $10,289,307.29 principal amount then outstanding, plus interest, from Gulbin and Terry.  *See* Exhibit C at 1.

40.     Greensill agreed to forbear legal action against Defendants to collect the outstanding amounts due on the express condition that, among other things, Defendants agree to a repayment schedule of the aforementioned $10,289,307.29 principal amount owed:

> [w]ithout prejudice to any other rights and remedies which Greensill might have pursuant to the Guranty or Customer Agreement or applicable law or otherwise against either or both of the Guarantors (none of which, for the avoidance of doubt, are waived by virtue of this letter), and subject to the fulfillment of the Conditions as defined and set out below, Greensill is prepared to accept payment in the form of the Scheduled Payments set out below PROVIDED THAT both

> Guarantors return a signed copy of this letter to Greensill within 7 calendar days of the date of this letter:
>
> 1. The Guarantors shall make, or shall procure the Customer to make, the following payments (each a "**Scheduled Payment**", together the "**Scheduled Payments**") to Greensill, in each case by 12pm London time on the date of the relevant Scheduled Payment in immediately available funds in case USD to the account previously notified to Customer:
>
>    a. USD 500,000 on 29 April 2016;
>    b. USD 750,000 on 31 May 2016;
>    c. USD 750,000 on 30 June 2016;
>    d. USD 1,000,000 on 29 July 2016;
>    e. USD 1,000,000 on 31 August 2016;
>    f. USD 1,000,000 on 30 September 2016;
>    g. USD 1,500,000 on 31 October 2016;
>    h. USD 1,500,000 on 30 November 2016; and
>    i. USD 3,183,393.19 on 30 December 2016.

*See* Exhibit C, Clause 1 (emphasis in original).

41. Defendants agreed that failure to make any Scheduled Payment, among other things, would constitute a breach of the Forbearance Agreement and result in all Scheduled Payments or other amounts due to Greensill being immediately due and payable:

> [i]f the Guarantors fail to make any Scheduled Payment (whether in whole or in part) due on the date for payment set out in paragraph 1 above, this shall be considered an actionable breach of this letter agreement, and all rights and remedies of Greensill in respect of the Guaranty are hereby preserved to the fullest extent permitted. **All Scheduled Payments and any other monies due to Greensill pursuant to the terms of the Guaranty shall become immediately due and payable in the event that (i) the Guarantors fail to make any Scheduled Payment (in whole or in part) on the date for payment set out in paragraph 1 above**; (ii) either of the Guarantors fails to comp[ly] with any of the Conditions set out below or breaches of any other term of this letter agreement.

*See* Exhibit C, Clause 3 (emphasis added).

42. Greensill's entry into the Forbearance Agreement and willingness to accept the Scheduled Payments was also subject to certain additional conditions that if not fulfilled, would,

as noted above, also result in all Scheduled Payments or other amounts owed to Greensill being immediately due and payable:

> Greensill's willingness to accept payment in the form of the Scheduled Payments rather than immediately pursue all rights and remedies available to Greensill under the Customer Agreement and the Guaranty and applicable law (none of which rights and remedies are hereby waived, but rather preserved and retained in all respects) shall be subject to the compliance in full by both Guarantors of the following conditions ("**Conditions**") within the time specified for their fulfillment:
>
> . . .
>
> > B. until payment in full of all Scheduled Payments, the Guarantors shall not, and shall procure that neither the Company nor any Associated Company shall, without the prior written [consent] of Greensill:
> >
> > > b. create, or permit to subsist, any Security over any of his or its assets (where "Security" means any mortgage, charge (whether fixed or floating, legal or equitable), pledge, lien, assignment by way of security or other security interest securing any obligation of any person or any other agreement or arrangement having a similar effect); nor
> > >
> > > c. sell, lease, transfer or otherwise dispose of any of its assets other than (i) trading stock in the ordinary course of its business (which includes the sale or lease of aircraft), or (ii) with the prior written consent of Greensill (such consent not to be unreasonably withheld, but may be subject to the imposition of reasonable conditions by Greensill, where such sale, lease, transfer or disposal is required to facilitate the payment of the Scheduled Payments).

*See* Exhibit C, Clause A (emphasis in original).

43. The Forbearance Agreement "and any dispute or claim arising out of or in connection with it or its subject matter or formation (including non-contractual disputes or claims) shall be governed by and construed in accordance with the laws of the State of New York." *See* Exhibit C at 4.

44. Defendants do not dispute owing Greensill the full principal Certified Amount of $10,289,307.29 on the Accounts Receivable, plus accrued interest, pursuant to the Customer Agreement, Guaranty Agreement and Forbearance Agreement.

45. In fact, Defendants paid Greensill $131,082.95 on or about March 31, 2016, and $500,000.00 on or about April 26, 2016, for a total of $631,082.95 toward the amounts due under the Customer Agreement, Guaranty Agreement and Forbearance Agreement, but have made no payment to Greensill since then.

46. Defendants' failure to pay the outstanding $9,658,224.34, plus interest, constitutes a breach of the Customer Agreement, the Guaranty Agreement and the Forbearance Agreement.

47. Gulbin and Terry further breached the Forbearance Agreement by pledging (or purporting to pledge) and/or transferring (or purporting to transfer) assets (including assets of Tempus) without the prior written consent of Greensill, which they agreed not to do as an express Condition under the terms of the Forbearance Agreement.

48. Specifically, on information and belief, in or around June 2016, Terry pledged all of his interest in Tempus to Firefly Financial Limited ("Firefly"). On information and belief, in connection with that transaction, additional membership interests in Tempus were pledged to Firefly as security for payment and performance of certain obligations of Tempus and/or its affiliates.

49. These June 2016 pledges were in direct violation of the Forbearance Agreement.

50. On information and belief, in or about July 2017, Firefly exercised its rights under the June 2016 pledges and, among other things, transferred at least some portion, if not all, of Tempus' membership interests in its subsidiaries, including Tempus Aircraft Sales & Service, LLC ("TASS"), which operates a Pilatus aircraft dealership.

51. On information and belief, there is a dispute between Defendants as to the legal ownership of TASS, which constitutes a substantial portion of Tempus' assets.

52. The pledge and transfer of Defendants' assets, including the aforementioned pledge and transfer of membership interests in Tempus and TASS, is a breach of the Forbearance Agreement.

53. Due to Defendants' breach of their payment and other obligations under the Customer Agreement, Guaranty Agreement and Forbearance Agreement as set forth above, Greensill retained the undersigned to enforce its rights and agreed to pay the undersigned reasonable attorneys' fees, costs, and expenses incurred in connection with this action.

54. All conditions precedent to bringing this action, if any, have occurred, have been performed, or have been excused or waived.

## COUNT I
### Breach of Contract
**(Customer Agreement, Against Tempus)**

55. Greensill repeats and reincorporates the allegations contained in paragraphs 1 through 54 above as if fully set forth herein.

56. The Customer Agreement was entered into on or around October 16, 2014 and constitutes a valid and binding contract between Greensill and Tempus.

57. Tempus caused 4 Accounts Receivable totaling $10,289,307.29 to be generated by Bramid for services supplied to Tempus in connection with Tempus' business operations.

58. Pursuant to the Customer Agreement, Tempus submitted PAUFs for each of these Accounts Receivable, creating an "an independent, irrevocable, unconditional, legal, valid, transferable and binding obligation" to pay the Certified Amount of each Account Receivable on the relevant Maturity Date.

59. Each of these Accounts Receivable was Transferred to Greensill by Bramid in accordance with the terms of the Customer Agreement.

60. Tempus, therefore, was contractually obligated to pay Greensill $10,289,307.29 (the total Certified Amounts of all of Tempus' Payment Obligations), plus interest.

61. Tempus does not dispute that the principal Certified Amount of $10,289,307.29, plus interest, was owed to Greensill under the Customer Agreement, and Greensill was paid a total of $631,082.95 towards this amount approximately 18 months ago.

62. Since then, Greensill has not received any further payment towards this amount, which constitutes a breach of the Customer Agreement by Tempus.

63. As a result of Tempus' breach of the Customer Agreement, Greensill was damaged in the amount of $9,658,224.34, exclusive of interest, attorneys' fees and costs.

**WHEREFORE**, Greensill respectfully requests a final judgment against Tempus in the principal amount of $9,658,224.34, plus pre-judgment and post-judgment interest, all taxable costs and any such other or additional relief deemed just and proper.

## COUNT II
### Breach of Contract
**(Guaranty Agreement, Against Gulbin and Terry)**

64. Greensill repeats and reincorporates the allegations contained in paragraphs 1 through 54 above as if fully set forth herein.

65. The Guaranty Agreement was entered into on or around October 15, 2015 and constitutes a valid and binding contract between Greensill and Gulbin and Terry.

66. Pursuant to the Guaranty Agreement, Gulbin and Terry personally guaranteed the payment of all liabilities of Tempus to Greensill, and agreed that upon Tempus defaulting on any

of its payment obligations to Greensill, the payment obligations of Tempus would immediately become due and payable by Gulbin and Terry.

67. Gulbin and Terry, therefore, were contractually obligated to pay Greensill the $10,289,307.29, plus interest, owed by Tempus under the terms of the Customer Agreement.

68. Under the terms of the Guaranty Agreement, Gulbin and Terry also agreed to reimburse Greensill for all expenses, including attorneys' fees, incurred in connection with enforcement of the Guaranty Agreement.

69. Neither Gulbin nor Terry dispute that the $10,289,307.29, plus interest, was owed to Greensill under the Guaranty Agreement, and Greensill was paid a total of $631,082.95 towards this amount approximately 18 months ago.

70. Since then, Greensill has not received any further payment towards this amount, which constitutes a breach of the Guaranty Agreement by Gulbin and Terry.

71. As a result of Gulbin's and Terry's breach of the Guaranty Agreement, Greensill was damaged in the amount of $9,658,224.34, exclusive of interest, attorney's fees and costs.

**WHEREFORE**, Greensill respectfully requests a final judgment against Gulbin and Terry in the principal amount of $9,658,224.34, plus pre-judgment and post-judgment interest, attorneys' fees and all taxable costs, and any such other or additional relief deemed just and proper.

**COUNT III**
**Breach of Contract**
**(Forbearance Agreement, Against Gulbin and Terry)**

72. Greensill repeats and reincorporates the allegations contained in paragraphs 1 through 54 above as if fully set forth herein.

73. The Forbearance Agreement was entered into on or around March 31, 2016 and constitutes a valid and binding contract between Greensill, Gulbin, and Terry.

74. Pursuant to the Forbearance Agreement, Gulbin and Terry agreed that they would repay the entire $10,289,307.29 principal balance, plus interest, owed by Tempus under the Customer Agreement and by Gulbin and Terry under the Guaranty Agreement.

75. Gulbin and Terry do not dispute that the $10,289,307.29, plus interest, was owed to Greensill under the Forbearance Agreement, and Greensill was paid a total of $631,082.95 towards this amount approximately 18 months ago.

76. Since then, Greensill has not received any further payment towards this amount, which constitutes a breach of the Forbearance Agreement by Gulbin and Terry.

77. As a result of Gulbin's and Terry's breach of the Forbearance Agreement, Greensill was damaged in the amount of $9,658,224.34, exclusive of interest, attorneys' fees and costs

**WHEREFORE**, Greensill respectfully requests a final judgment against Gulbin and Terry in the principal amount of $9,658,224.34, plus pre-judgment and post-judgment interest, all taxable costs, and any such other or additional relief deemed just and proper.

## COUNT IV
### Declaratory Relief
**(Forbearance Agreement, Against all Defendants)**

78. Greensill repeats and reincorporates the allegations contained in paragraphs 1 through 54 above as if fully set forth herein.

79. The Forbearance Agreement was entered into on or around March 31, 2016 and constitutes a valid and binding contract between Greensill, Gulbin, and Terry.

80. As set forth more fully herein, there is a bona fide dispute between the parties regarding their respective rights and obligations under the Forbearance Agreement.

81. In particular, there is a justiciable question as to Greensill's current rights under the Forbearance Agreement in light of Defendants' breaches set forth above, and Greensill seeks a declaration that Defendants' efforts to pledge and transfer their assets constitutes a breach of the prohibition in the Forbearance Agreement against Gulbin and Terry pledging, selling, transferring or otherwise disposing of any interest in their assets prior to them completing the Scheduled Payments to Greensill set forth therein.

82. There is a bona fide, actual, present need for the declaration that Greensill seeks and Greensill continues to be damaged as a result of Defendants' conduct because the attempted asset pledges and transfers will deprive Greensill of an express condition that Greensill bargained for with Defendants in exchange for Greensill accepting the Scheduled Payments.

83. Greensill will continue to be damaged if Defendants are allowed to continue breaching the Forbearance Agreement through their efforts to pledge and transfer their assets without first completing the Scheduled Payments owed to Greensill.

**WHEREFORE**, Greensill respectfully requests a final judgment against Defendants declaring that Defendants are not permitted to pledge, sell, lease, transfer or otherwise dispose of their assets under the terms of the Forbearance Agreement, an injunction prohibiting Defendants from selling, leasing, transferring, or otherwise disposing of their assets except as permitted under the Forbearance Agreement, and any such other or additional relief deemed just and proper.

| | |
|---|---|
| Dated: October 13, 2017 | Respectfully submitted, |
| | /s/ *David G. Barger*  <br>David G. Barger <br>VSB #  21652 <br>*Counsel for Plaintiff Greensill Capital, (UK) Limited, a foreign entity* <br>GREENBERG TRAURIG, LLP <br>1750 Tysons Blvd., Suite 1000 <br>McLean, VA 22102 <br>Telephone: (703) 749-1307 <br>Facsimile: (703) 714-8307 <br>Email: bargerd@gtlaw.com <br><br>FRANCISCO O. SANCHEZ (*pro hac vice pending*) <br>Florida Bar No. 0598445 <br>EVA M. SPAHN (*pro hac vice pending*) <br>Florida Bar No. 0092063 <br>GREENBERG TRAURIG, LLP <br>333 S.E. 2nd Avenue, Suite 4400 <br>Miami, Florida  33131 <br>Telephone: (305) 579-0500 <br>Facsimile: (305) 579-0717 <br>sanchezfo@gtlaw.com <br>spahne@gtlaw.com |