UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| GREENSILL CAPITAL (UK) LIMITED, a foreign entity,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>TEMPUS INTERMEDIATE HOLDINGS, LLC, a Delaware corporation, JACK GULBIN, an individual, and B. SCOTT TERRY, an individual,<br><br>　　　　　Defendants. | Civil No. 4:17-cv-00127-AWA-LRL |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AS TO COUNTS I, II AND III OF ITS COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 56 and this Court's local rules, Plaintiff, Greensill Capital (UK) Limited ("Greensill"), hereby submits this Memorandum in Support of its Motion for Summary Judgment (the "Motion") as to Counts I, II and III of its Complaint [ECF No. 1] against Defendants, Tempus Intermediate Holdings, LLC ("Tempus"), Jack Gulbin ("Gulbin") and B. Scott Terry ("Terry") (collectively, "Defendants").[1]  Greensill is entitled to summary judgment in its favor on each of these contract-based claims because there is no dispute that pursuant to the various contractual agreements that Defendants entered into with Greensill, they owe Greensill a principal balance of $9,658,224.34, plus interest, as well as the attorneys' fees incurred by Greensill in relation to this action.

---

[1] In its Opinion and Order dated April 24, 2018 [ECF No. 37], the Court granted Greensill's Motion for Partial Judgment on the Pleadings [ECF No. 25] as to Count IV of its Complaint.

# OVERVIEW[2]

Pursuant to the Customer Agreement that Tempus entered into with Greensill, Tempus was irrevocably obligated to pay Greensill a principal total of $10,298,307.29 for services provided by Greensill in connection with Tempus' business operations. Gulbin and Terry personally guaranteed Tempus' obligation to repay this entire amount to Greensill, with interest, and agreed to pay Greensill for attorneys' fees incurred in collecting payment, as set forth in the Personal Guaranty that they each executed (the "Guaranty Agreement"). Defendants do not, and indeed cannot, dispute that Tempus did not fulfill its irrevocable payment obligations to Greensill under the Customer Agreement, and that these liabilities were not honored by Gulbin or Terry pursuant to the Guaranty Agreement. This resulted in Tempus, Gulbin and Terry executing the Forbearance Agreement, whereby Gulbin and Terry each agreed to repay the entire balance owed to Greensill over a specifically agreed-upon payment schedule. Defendants admittedly tendered only $631,082.95 of this amount, leaving an unpaid principal balance of $9,658,224.34 owed to Greensill, in breach of the Customer Agreement, Guaranty Agreement and Forbearance Agreement.

## STATEMENT OF UNDISPUTED FACTS

Pursuant to Eastern District of Virginia Local Rule 56(B), the material facts set forth below are undisputed.

### I.   Greensill's Contractual Relationships with Defendants

1.   Tempus and Greensill entered into the Customer Agreement on or about October 16, 2014. Sworn Declaration of Brett Downes ("Downes Decl.," attached as **Exhibit 1** hereto) ¶ 4 and Exhibit A thereto at 1; Tempus Intermediate Holdings, LLC's Responses to Greensill

---

[2] All capitalized terms herein shall have the same meaning as set forth in Greensill's Complaint [ECF No. 1], unless otherwise specified.

Capital (UK) Limited's First Set of Admission Requests ("Tempus Admissions," attached as **Exhibit 2** hereto) ¶¶ 1, 2; Pages 6 through 8 of Defendant, Jack Gulbin's Responses to Interrogatories, Requests for Admission and Request for Production of Documents Propounded by Plaintiff, Greensill Capital (UK) Limited ("Gulbin Admissions," attached as **Exhibit 3** hereto) ¶ 3; B. Scott Terry's Responses to Greensill Capital (UK) Limited's First Set of Admission Requests ("Terry Admissions," attached as **Exhibit 4** hereto) ¶ 2.

2. The terms of the Customer Agreement authorized, but did not obligate, Tempus to submit payment assurance upload files ("PAUFs") for each Account Receivable generated from the services received from Tempus' Supplier, each of which created an irrevocable and binding Payment Obligation to Greensill. Downes Decl., Exhibit A: The PAUF and Payment Obligation, Clauses 2.1, 2.2 and 2.8; Definitions and Interpretations, Clause 1.1; and Representations and Warranties, Clauses 4.1.5 and 4.1.6.

3. The Default Interest Rate on the Account Receivables generated under the Customer Agreement was "USD LIBOR (daily) plus ten per cent (10%) per annum." Downes Decl., Exhibit A, Definitions and Interpretations, Clause 1.1.

4. The Customer Agreement and any contractual, quasi-contractual or non-contractual rights and obligations "arising out of or in connection with it shall be governed by and construed in accordance with the laws of England and Wales." Downes Decl., Exhibit A, Governing Law, Clause 10.1.

5. Approximately one year later, on or around October 15, 2015, Gulbin and Terry executed the Guaranty Agreement. Downes Decl. ¶ 5 and Exhibit B thereto at 1; Gulbin Admissions ¶ 1; Terry Admissions ¶ 1.

6. Gulbin and Terry executed the Guaranty Agreement because Greensill was otherwise "unwilling to extend or continue credit to or other financial accommodations" to Tempus. Downes Decl. ¶ 5 and Exhibit B thereto at 1.

7. Pursuant to the Guaranty Agreement, Gulbin and Terry "absolutely and unconditionally [guaranteed] the payment of all liabilities of [Tempus] to [Greensill]" and agreed that if Tempus defaulted on any liability under the Customer Agreement, all liabilities of Tempus would immediately be due and owing by them personally. Downes Decl., Exhibit B, at 1-3.

8. Under the terms of the Guaranty Agreement, Gulbin and Terry also agreed to reimburse Greensill for all expenses, including attorneys' fees, incurred in connection with enforcement of the Guaranty Agreement. Downes Decl., Exhibit B, at 1-2.

9. The Guaranty Agreement was "entered into under and pursuant to the laws of the State of New York and shall be in all respects governed, construed, applied and enforced in accordance with the laws of said State." Downes Decl., Exhibit B, at 5.

## II. Defendants' Failure to Pay the Amounts Owed to Greensill Under the Customer Agreement and the Guaranty Agreement

10. Between October 16, 2015 and January 20, 2016, Tempus caused four Accounts Receivable, totaling $10,289,307.29, to be generated by its Supplier, Bramid Limited ("Bramid"), for services supplied to Tempus in connection with its business operations, and payments on each Account Receivable were due on specific Maturity Dates. Downes Decl. ¶ 6 and Composite Exhibit C thereto; Tempus Admissions ¶¶ 3, 5.

11. Tempus submitted PAUFs for each Account Receivable, creating an "an independent, irrevocable, unconditional, legal, valid, transferable and binding obligation" to pay the Certified Amount of each Account Receivable on the determined Maturity Date. Downes Decl. ¶ 7 and Composite Exhibit D thereto; Tempus Admissions ¶¶ 4, 6.

12. Each of these Accounts Receivable was Transferred to Greensill by Bramid in accordance with the Customer Agreement, and no such Transfer was objected to, questioned or otherwise challenged by Tempus. Downes Decl. ¶¶ 8, 9 and Composite Exhibit E thereto; Tempus Admissions ¶ 8.

13. Pursuant to the Customer Agreement, the Transfer of each of these Account Receivables from Bramid to Greensill caused Tempus to incur an "independent, irrevocable, unconditional, legal, valid, transferable and binding obligation" to pay Greensill the Certified Amounts totaling $10,289,309.29 on the applicable Maturity Dates. Downes Decl., Exhibit A, The PAUF and Payment Obligation, Clause 2.2.

14. Pursuant to the terms of the Guaranty Agreement, Gulbin and Terry guaranteed this financial liability of Tempus and acknowledged that upon Tempus defaulting on any Payment Obligation, all amounts owed by Tempus to Greensill would immediately be owed by them. Downes Decl., Exhibit B, at 2-3.

15. After Tempus defaulted on its Payment Obligations under the Customer Agreement, Greensill demanded immediate payment from Gulbin and Terry of the $10,289,307.29 principal amount then outstanding, plus interest, pursuant to their "absolute and unconditional" guarantee of Tempus' financial liabilities to Greensill under the Guaranty Agreement. Downes Decl. ¶ 10 and Exhibit F thereto at 1; Tempus Admissions ¶¶ 9, 10.

16. At that time, Greensill agreed to forbear legal action against Defendants, in exchange for repayment of the $10,289,307.29 principal amount owed, plus interest, according to the Scheduled Payments set forth in the March 31, 2016 Forbearance Agreement executed by Defendants. Downes Decl. ¶ 11 and Exhibit F thereto, Clause 1; Gulbin Admissions ¶ 4; Terry Admissions ¶¶ 3, 4.

17.     Defendants agreed that failure to make any Scheduled Payment would accrue daily interest charged at a rate of "fifteen percent per annum (15% pa) and constitute a breach of the Forbearance Agreement and result in all amounts due to Greensill being immediately due and payable. Downes Decl., Exhibit F, Clauses 2 and 3.

18.     The Forbearance Agreement "and any dispute or claim arising out of or in connection with it or its subject matter or formation (including non-contractual disputes or claims) shall be governed by and construed in accordance with the laws of the State of New York." Downes Decl., Exhibit F, at 4.

### III.    The Amounts Currently Owed to Greensill Under the Customer Agreement, Guaranty Agreement and Forbearance Agreement

19.     Defendants do not dispute the $10,289,307.29 principal debt, plus interest, that they still owe Greensill pursuant to the Customer Agreement, Guaranty Agreement and Forbearance Agreement. Downes Decl. ¶ 12; Tempus Intermediate Holdings, LLC's Responses to Greensill Capital (UK) Limited's First Request for Production ("Tempus Document Responses," attached as **Exhibit 5** hereto) ¶ 25; Pages 8 through 18 of Defendant, Jack Gulbin's Responses to Interrogatories, Requests for Admission and Request for Production of Documents Propounded by Plaintiff, Greensill Capital (UK) Limited ("Gulbin Document Responses," attached as **Exhibit 6** hereto) ¶ 23; B. Scott Terry's Responses to Greensill Capital (UK) Limited's First Request for Production ("Terry Document Responses," attached as **Exhibit 7** hereto) ¶ 23.

20.     In fact, Defendants caused Greensill to be paid a total of $631,082.95 toward this amount in March and April of 2016, but have made no other payment towards the balance owed to Greensill. Downes Decl. ¶ 13; Tempus Admissions ¶¶ 9, 10; Gulbin Admissions ¶¶ 6, 7, 8, 9; Terry Admissions ¶¶ 5, 6, 7, 8.

6

21.     Accordingly, Defendants still owe Greensill $9,658,224.34, plus interest, pursuant to the Customer Agreement, the Guaranty Agreement and the Forbearance Agreement.  Downes Decl. ¶ 14.

## ARGUMENT

**I.     Summary Judgment Standard**

"[T]he Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Ass'n for Supervision & Curriculum Dev., Inc. v. Int'l Council for Educ. Reform & Dev., Inc.*, Civil Action No. 1:10-cv-74, 2011 WL 1225750, * 3 (E.D. Va. Mar. 14, 2011); *see also Winzeler v. Sanchez*, Civil Action No. 2:13-cv-612, 2015 WL 12645001, *3 (E.D. Va. July 28, 2015).  "Once a motion for summary judgment is properly made and supported the opposing party must come forward with specific facts showing that there is a genuine issue for trial." *Winezeler*, 2015 WL 12645001 at *3; *see also Ass'n for Supervision*, 2011 WL 1225750 at *3. "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement; the requirement is that there be no genuine issue of material fact." *Ass'n for Supervision*, 2011 WL 1225750 at *3. "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice."  2015 WL 12645001 at *3.  "A genuine issue concerning a 'material' fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor … [and] Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file,

designate specific facts showing that there is a genuine issue for trial." *Ass'n for Supervision*, 2011 WL 1225750 at *3; *Winezeler*, 2015 WL 12645001 at *3.[3]

II.   **Greensill is Entitled to Summary Judgment on Count I Based on Tempus' Undisputed Breach of its Payment Obligations Under the Customer Agreement.**

Greensill and Tempus entered into the Customer Agreement, which is governed by the laws of England and Wales. Statement of Undisputed Facts ("SUF") ¶¶ 1, 4. Federal Rule of Civil Procedure 44.1 states that "[i]n determining issues of foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law." Attached as **Exhibit 8** hereto is the Expert Report of Adam Tolley QC ("Tolley Report"), a barrister in independent practice and Qualified Counsel in England and Wales, which sets forth the application of the laws of England and Wales to Tempus' failure to pay the amounts that are undisputedly owed to Greensill under the Customer Agreement.

The Customer Agreement is "clearly supported by consideration" and constitutes a valid and binding contract between Greensill and Tempus under the laws of England and Wales. *See* Tolley Report ¶¶ 12-14. Pursuant to the Customer Agreement, Tempus caused four Accounts Receivable totaling $10,289,307.29 to be generated by Bramid for services supplied to Tempus in connection with Tempus' business operations and submitted PAUFs for each Account Receivable, creating an "an independent, irrevocable, unconditional, legal, valid, transferable and binding obligation" to pay the Certified Amount of each Account Receivable on the determined Maturity Date. SUF ¶¶ 2, 3, 10, 11. Each Account Receivable was Transferred to Greensill by Bramid in accordance with the terms of the Customer Agreement (SUF ¶ 12), which caused

---

[3] Defendants asserted no affirmative defenses in response to Greensill's claims (ECF Nos. 21 and 22) and the discovery period closed without any Defendant serving any discovery on Greensill or on any third party.

Tempus to incur an "independent, irrevocable, unconditional, legal, valid, transferable and binding obligation" to pay Greensill the Certified Amounts totaling $10,289,309.29 (SUF ¶13).

Tempus admittedly failed to fulfill its Payment Obligations to Greensill under the Customer Agreement (SUF ¶ 15), which constitutes a breach thereof by Tempus. *See* Tolley Report ¶¶ 19-21. Greensill is thus entitled to $9,658,224.34 in breach of contract damages, plus interest at the Default Interest Rate of "USD LIBOR (daily) plus 10% per annum" set forth in the Customer Agreement (SUF ¶ 3). *See* Tolley Report ¶¶ 23-26. On this basis, summary judgment should be entered in favor of Greensill on Count I of its Complaint.

### III. Greensill is Entitled to Summary Judgment on Counts II and III Based on Gulbin and Terry Failing to Pay the Amounts Owed to Greensill Under the Guaranty Agreement and the Forbearance Agreement.

After Tempus defaulted on its Payment Obligations pursuant to the Customer Agreement, Gulbin and Terry admittedly failed to pay Greensill the amounts required by the Guaranty Agreement and the Forbearance Agreement (SUF ¶¶ 20, 21), both of which are governed by New York law (SUF ¶¶ 9, 18). This undisputed non-payment by Gulbin and Terry constitutes a breach of the Guaranty Agreement and the Forbearance Agreement and entitles Greensill to judgment as a matter of law on Counts II and III.

#### A. *Gulbin's and Terry's undisputed breach of the Guaranty Agreement*

Under New York law, "[a] guaranty is a promise to fulfill the obligations of another party, and is subject 'to the ordinary principles of contract construction' [and] [u]nder those principles 'a written contract that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms.'" *Cooperatieve Centrale Raiffiesen-Boerenleenbank, B.A. v. Navarro*, 36 N.E. 3d 80, 85 (N.Y. 2015); *see also AXA Inv. Managers UK Ltd. v. Endeavor Capital Mgmt., LLC*, 890 F. Supp. 2d 373, 382 (S.D. N.Y. 2012). "New York law has explicitly and consistently upheld personal guaranties – particularly absolute and

9

unconditional guaranties of payment – that help persuade a party to enter into a contract with a company for which the guarantor works, the required consideration being implicitly the same consideration that underlies the contract as a whole." *AXA Inv.*, 890 F. Supp. 2d at 386; *see also Cooperatieve Centrale*, 36 N.E. 3d at 85.  Greensill's burden on summary judgment, therefore, entails "prov[ing] no more than an absolute and conditional guaranty, the underlying debt, and [Gulbin's and Terry's] failure to perform under the guarantee." *AXA Inv.*, 890 F. Supp. 2d at 381; *see also Cooperatieve Centrale*, 36 N.E. 3d at 492.

Gulbin and Terry executed the Guaranty Agreement because Greensill was otherwise "unwilling to extend or continue credit to or other financial accommodations to" Tempus.  SUF ¶¶ 5, 6.  Pursuant to the Guaranty Agreement, Gulbin and Terry "absolutely and unconditionally [guaranteed] the payment of all liabilities of [Tempus] to [Greensill]" and agreed that if Tempus defaulted on any liability under the Customer Agreement, all liabilities of Tempus would immediately be due and owing by them personally.  SUF ¶ 7. Gulbin and Terry also agreed to reimburse Greensill for all expenses, including attorneys' fees, incurred in connection with enforcement of the Guaranty Agreement.  SUF ¶ 8.

After Tempus defaulted on its payment obligations under the Customer Agreement, Greensill demanded immediate payment from Gulbin and Terry of the $10,289,307.29 principal amount then outstanding, plus interest, pursuant to their "absolute and unconditional" guarantee of Tempus' financial liabilities to Greensill under the Guaranty Agreement.  SUF ¶ 15.  Gulbin and Terry concede that this debt to Greensill was generated by Tempus under the Customer Agreement (SUF ¶ 19) but was not repaid by either of them (SUF ¶¶ 20, 21).  This breach of the Guaranty Agreement warrants entry of summary judgment for Greensill on Count II of its Complaint. *AXA Inv.*, 890 F. Supp. 2d at 386; *Cooperatieve Centrale*, 36 N.E. 3d at 86.

### B. *Gulbin's and Terry's undisputed breach of the Forbearance Agreement*

There is no question that Greensill agreed to forbear legal action against Defendants in exchange for Gulbin and Terry agreeing to repay the entire $10,289,307.29 principal balance, plus interest, owed by Tempus under the Customer Agreement, and by Gulbin and Terry under the Guaranty Agreement, as set forth in the Forbearance Agreement.  SUF ¶ 16.  Defendants also agreed that failure to make any Scheduled Payment would accrue daily interest charged at a rate of "fifteen percent per annum (15% pa) and constitute a breach of the Forbearance Agreement and result in all amounts due to Greensill being immediately due and payable."  SUF ¶ 17.  Gulbin and Terry admittedly failed to make the Scheduled Payments under the Forbearance Agreement, and currently owe Greensill an unpaid principal balance of $9,658,224.34, plus interest.  SUF ¶¶ 20, 21.  Based on this clear breach of the Forbearance Agreement, summary judgment should be entered in favor of Greensill on Count III of Greensill's Complaint.  *MM Arizona Holdings, LLC v. Bonanno*, 658 F. Supp. 2d 589, 592 (S.D. N.Y 2009); *Inland Mortg. Capital Corp. v. Realty Equities NM, LLC*, 71 A.D. 3d 1089, 1090 (N.Y. App. Div. 2010); *JP Morgan Chase Bank, N.A. v. Agnello*, 62 A.D. 3d 662, 663 (N.Y. App. Div. 2009).

## CONCLUSION

For the reasons set forth above and in Greensill's Motion, Greensill respectfully requests that the Court: 1) enter judgment in favor of Greensill and against Defendants on Counts I, II and III of its Greensill and awarding Greensill damages in the amount of $9,658,224.34, plus interest; 2) award Greensill the attorneys' fees, expenses and costs incurred in connection with this action; and 3) grant Greensill any other or additional relief deemed just and proper.

Dated: August 6, 2018 Respectfully submitted,

/s/ *David G. Barger*
David G. Barger
VSB # 21652
*Counsel for Plaintiff Greensill Capital, (UK) Limited*
GREENBERG TRAURIG, LLP
1750 Tysons Blvd., Suite 1000
McLean, VA 22102
Telephone: (703) 749-1307
Facsimile: (703) 714-8307
Email: bargerd@gtlaw.com

FRANCISCO O. SANCHEZ (*pro hac vice admitted*)
Florida Bar No. 0598445
EVA M. SPAHN (*pro hac vice admitted*)
Florida Bar No. 0092063
GREENBERG TRAURIG, LLP
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida  33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717
sanchezfo@gtlaw.com
spahne@gtlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of August, 2018, I electronically filed the foregoing with the Clerk of Court, using CM/ECF. I also certify that the foregoing document was served on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF, or via other means if required.

/s/ David G. Barger
David G. Barger
VSB # 21652
*Counsel for Plaintiff Greensill Capital,(UK) Limited*
GREENBERG TRAURIG, LLP
1750 Tysons Blvd., Suite 1000
McLean, VA 22102
Telephone: (703) 749-1307
Facsimile: (703) 714-8307
Email: bargerd@gtlaw.com